FILED by ___ D.C.

ELECTRONIC

**Sep 15 2004**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 04-80343 CIV–HURLEY/HOPKINS

CARLINE SMITH,

      Plaintiff,

v.

GRAND BANK & TRUST
OF FLORIDA,

      Defendant.

_____/

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS VERIFIED MOTION FOR SANCTIONS

Defendant, GRAND BANK & TRUST OF FLORIDA, ("Grand Bank"), by and through its attorneys, Christine D. Hanley & Associates, P.A., files this Memorandum of Law in support of its Verified Motion for Attorneys' Fees and Expenses pursuant to Rule 7.3, S.D. Fla. Local Rules.

## INTRODUCTION

Defendant seeks to recover its attorneys' fees and expenses because it was forced to defend an action Plaintiff and her counsel knew, prior to filing, had no basis in law or in fact. In March, 2004, Plaintiff threatened to file a lawsuit against Defendant. In response, Grand Bank advised Plaintiff and her counsel of the essential facts, facts which Plaintiff already knew, facts that clearly demonstrated that Plaintiff had no colorable cause of action. Had Plaintiff's counsel conducted even a

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 2 of 15

cursory inquiry into the law at that juncture, they would have discovered the futility of Plaintiff's cause.  Notwithstanding the lack of merit, Defendant offered a nominal settlement if Plaintiff would relinquish her pursuit.  On April 12, 2004, after refusing to abandon her cause, Plaintiff filed a frivolous Complaint alleging Grand Bank violated the Family Medical Leave Act ("FMLA" or the "Act").  On May 14, 2004, and in lieu of an answer, Defendant filed a Rule 12(b)(6) Motion for Summary Judgment because it was immediately apparent that Plaintiff's Complaint failed to state a cause of action upon which relief could be granted.  Subsequently, Plaintiff requested an enlargement of time to respond to Defendant's Motion so as to conduct needless discovery. (D.E. 15.)  Plaintiff took no depositions and Plaintiff's written discovery resulted in the production of no documents which Plaintiff did not already have in her possession or which were relevant to the cause and Plaintiff's ultimate decision to dismiss.[1]   On July 13, 2004, Defendant took Plaintiff's deposition and confirmed *through Plaintiff's own testimony* that Plaintiff knew or should have known all along that her claims were wholly without merit from the outset.  Nevertheless, Plaintiff did not dismiss and on August 9, 2003, Defendant filed an Amended Motion for Summary Judgment in order to bring Plaintiff's admissions to the Court's attention.

---

[1] As already noted in ¶ 11 of Defendant's Verified Motion for Sanctions, Plaintiff filed a Notice of Voluntary Dismissal on September 7, 2004.

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 3 of 15

Rule 1 of the Federal Rules of Civil Procedure mandates that the rules governing procedure in the United States District Courts "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." To this end, several rules and statutes, including 28 U.S.C. Section 1927 and the Court's inherent powers, provide parties the right to recover fees and costs from litigants and/or their attorneys. Further, Rule 7.3(B) of the Local Rules of the United States District Court for the Southern District of Florida provides that parties may seek to recover fees and costs prior to entry of final judgment. *See Matter of Yagman*, 796 F.2d 1165, 1183-84 (9th Cir. 1986) (urging early intervention before further judicial resources are wasted). This case was untenable from its inception and Plaintiff wasted both this Court's and Grand Bank's valuable time and resources addressing claims asserted in a baseless lawsuit that never should have been filed. For those reasons, as more fully set forth in the following Memorandum of Law, Grand Bank hereby seeks to recover its fees and costs.

## MEMORANDUM OF LAW

I.    **DEFENDANT IS ENTITLED TO AN AWARD OF FEES PURSUANT TO 28 U.S.C. § 1927 BECAUSE COUNSEL FOR PLAINTIFF VEXATIOUSLY MULTIPLIED THESE PROCEEDINGS.**

28 U.S.C. § 1927 provides that "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 4 of 15

court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct."  From the outset, Plaintiff's counsel knew that their client had no cause of action.  Even before the Complaint was filed, Defendant advised Plaintiff in writing that her allegations were unfounded, attached evidentiary support for its contentions, and asked Plaintiff not to pursue the matter. (*See* Letter from Christine D. Hanley to Scott Behren faxed on March 2, 2004, attached hereto at **Ex. A**.)  Even a perfunctory inquiry into the law would have demonstrated that there was no merit to the threatened lawsuit, yet the Complaint was brought and prosecuted in bad faith.  To occupy one's opponents and the Court in meritless and fruitless litigation is an illegitimate endeavor for which there is no proper purpose and should be sanctioned.

### A.    Plaintiff's Counsel Knew that Plaintiff Had No Cause of Action Even Before They Filed the Complaint.

Plaintiff's counsel knew, at the consultation stage and long before they filed the Complaint, that there was no colorable basis in fact or law to support Plaintiff's cause of action — yet they still filed the Complaint.  Knowingly filing a meritless lawsuit is the very definition of bad faith.  Through facts which are conveniently left out and facts that are knowingly misrepresented, the Complaint itself reveals counsels' bad faith.  First, Plaintiff falsely alleges in her Complaint that the position she rejected upon her return to work on November 10, 2003 was not "comparable in

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 5 of 15

compensation, terms, or in any other fashion" to her former position. (Compl. ¶ 15.)

Plaintiff and her counsel *knew* that the position offered was equal in pay and benefits,

yet they knowingly misrepresented this fact in the Complaint.  ("He told me you will

get all your benefits, you will be paid the same…," Pl.'s Dep. 156:11-13, attached

as Ex. A1 to Def.'s Am. Stmt. of Facts, DE 21.)[2]  This knowing misrepresentation

constitutes bad faith.  Second, Plaintiff and her counsel conveniently left out the fact

that Plaintiff's return to work on November 10, 2003 was only on a part-time and

intermittent basis.   Plaintiff's deposition testimony and documents she herself

produced demonstrate that this was well known to Plaintiff and her counsel all along.

(Def.'s Am. Stmt. of Facts ¶¶ 6, 8, 11, DE 21.)

       The Complaint was crafted so as to both misrepresent and leave out facts

which, if plead, would have defeated the cause of action.   As a matter of law,

Plaintiff was *not* entitled to be restored to her former or equivalent full-time position

when returning to work on a part-time or intermittent basis.   An employer is

specifically authorized by the Act to place employees returning on a part-time or

intermittent basis in an alternative position with equal pay and benefits.  *See* 29

---

[2] Plaintiff testified that she did not read the Complaint before it was filed, but that her counsel
sent a copy of it to her after it was filed. (Pl.'s Dep. ¶ 221:7-222:25 (attached as Ex. A1 to Def.'s
Am. Stmt. of Facts, D.E.#21)   Even though Plaintiff's counsel were not under any time
constraints (there was no statute of limitations or other question of timeliness at issue),
Plaintiff's counsel failed to take even this modicum of care to insure that the allegations
contained in the Complaint were true.

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 6 of 15

C.F.R. § 825.204. (*See also* Def.'s Am. Mot. Summ. J. at 6-8, D.E.#22.)   The

gravamen of the Complaint, that Defendant failed to restore Plaintiff to her former or

equivalent position when she returned to work [*on an intermittent basis*] was,

therefore, known to Plaintiff to be legally and factually defective from the start.

Significant to a determination of whether the Complaint was filed and then

subsequently prosecuted in bad faith is whether Plaintiff's counsel knew *all* of the

facts necessary to conclude there was no cause of action from the outset.  A review of

Plaintiff's own testimony and the documents Plaintiff had in her possession (before

discovery) conclusively show that, *at the consultation stage*, Plaintiff and her counsel

knew or should have known that (i) Plaintiff began her FMLA leave on September

15, 2003,[3] (ii) Plaintiff was released by her physician to work only *part-time* on

November 10, 2003,[4] (iii) Plaintiff refused to work in an alternate position with equal

pay and benefits,[5] (iv) Plaintiff was paid for 30 hours part-time work from November

10 – 21, 2003 even though she refused to work,[6] (v) Plaintiff was no longer able to

work even part-time as of November 13, 2003,[7] (vi) Plaintiff resigned her position on

November 25, 2003, (vii) Plaintiff's leave expired on December 15, 2003,[8] (viii)

_____

[3] *See* Compl. ¶ 10.
[4] *See* Def.'s Amended St. Facts ¶ 6 (D.E.#21).
[5] *See* Def.'s Amended St. Facts ¶ 14-15 (D.E.#21).
[6] *See* Def.'s Amended St. Facts ¶ 11, 14, 15, 17 (D.E.#21).
[7] *See* Def.'s Amended St. Facts ¶ 17 (D.E.#21).
[8] *See* Def.'s Amended St. Facts ¶ 23, 25 (D.E.#21).

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 7 of 15

Plaintiff was not released to work full-time until December 23, 2003, *after* the expiration of her FMLA leave,[9] (ix) Defendant gratuitously extended Plaintiff's benefits through December 31, 2003,[10] and, (x) Plaintiff rebuffed all of Grand Bank's offers to restore Plaintiff to her position, when and if she was able to return to work, and to extend her leave an additional eight weeks.[11]   The record shows that these facts were known to Plaintiff's counsel before the lawsuit was filed.  With advance knowledge of these facts, there was no proper purpose for bringing suit.  Moreover, after Plaintiff herself admitted these facts, Plaintiff's counsel were under an ethical duty as officers of the Court to discontinue its prosecution.  But counsel persisted in bad faith for no apparent purpose other than the hope of extorting a settlement from the Defendant.

In yet another attempt at early resolution, Defendant filed a 12(b)6 Motion for Summary Judgment for failure to state a claim.  In response, and in an apparent desperate attempt to prolong the proceedings, Plaintiff sought leave to engage in unnecessary discovery before responding to Defendant's Motion.   Even if proceeding in good faith, "filing a lawsuit is not a gratuitous license to conduct infinite forays into search of evidence." *Avirgan v. Hull et al.*, 932 F.2d, 1572, 1582 (11th Cir. 1991).  Plaintiff knew that discovery was unnecessary because Plaintiff

---

[9] *See* Def.'s Amended St. Facts ¶ 27, 28 (D.E.#21).
[10] *See* Def.'s Amended St. Facts ¶ 23, 25 (D.E.#21).

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 8 of 15

and her counsel already had all the information needed to determine there was no cause of action. Even after Plaintiff's deposition, in which Plaintiff testified to facts which made it clear that Plaintiff never had grounds to support her cause, Plaintiff and her counsel still refused to dismiss and the litigation was unnecessarily prolonged. Once it becomes apparent that there is a dearth of evidence to bear out a claim, as here, the litigant and her attorney have a duty to discontinue their quest. *Id.*

If Section 1927 is to be effective, a district court judge, in his or her broad discretion, must be able to impose sanctions that appear appropriate to combat the expense, inefficiency and backlog suffered because of wrongfully filed complaints and motions. *Collins v. Walden*, 834 F.2d 961, 966 (11th Cir. 1988). In this case, the Complaint clearly should never have been filed and all expenses associated with its defense were improperly borne by Grand Bank.

## B. Plaintiff Refused to Dismiss Her Complaint on Three Occasions Thereby Vexatiously Multiplying These Proceedings

When determining whether an award of sanctions is appropriate, courts have considered whether the violating party refused to dismiss at the earliest opportunity or upon a reasonable request by opposing counsel. *See Baker v. McDonald's Corporation*, 686 F. Supp. 1485, 1487 (S.D. Fla. 1987). "The Eleventh Circuit has

---

[11] *See* Def.'s Amended St. Facts ¶ 26, 28 (D.E.#21).

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 9 of 15

adopted a series of general guidelines delineating the circumstances under which statutory attorney's fees for Defendant's are appropriate….[D]id the defendant offer to settle" is the second of those guidelines. *Cordoba v. Dillard's, Inc.,* 2003 WL 21499011, *2 (M.D. Fla. 2003).

Even before the Complaint was filed, when Defendant advised Plaintiff in writing that her allegations were unfounded, attached evidentiary support for its contentions, and asked Plaintiff not to pursue the matter (*See* **Ex. A**.), Defendant extended a nominal offer of settlement in the amount of $2,500 if Plaintiff would drop her threatened suit. (*See* Letter from Christine D. Hanley to Scott Behren faxed March 2, 2004, attached hereto at **Ex. B**.)[12]  Obviously, Plaintiff rejected the offer and filed suit.  Yet a third time, immediately after Plaintiff's deposition wherein Plaintiff admitted all essential elements *against her interest*, Defendant again asked Plaintiff to dismiss her Complaint.  On this third occasion, Defendant offered to refrain from seeking fees and costs if only Plaintiff would dismiss.  In support of its request, Defendant provided Plaintiff with citations to the law and fact which again clearly demonstrated that the Complaint is frivolous.  (*See* Letter from Christine D.

_____

[12] Defendant's offer of settlement is presented here for purposes other than to prove liability or those which would require its exclusion under Rule 408 of the Federal Rules of Evidence. Consistent with *Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985) and its progeny, Defendant's offer of settlement is admissible to show the reasonableness of Defendant in its attempt to resolve this matter without resort to unnecessary and prolonged

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 10 of 15

Hanley to Scott Behren of July 14, 2004, attached hereto at **Ex. C**.)   But for Plaintiff's unreasonable, obdurate obstinacy, this motion, and all other motions precedent, would never have been filed and the litigation would not have been vexatiously prolonged.

As in *Cordoba v. Dillards,* the Plaintiff unnecessarily multiplied these already frivolous proceedings by rejecting Defendant's reasonable offers:

> An award of attorney's fees to Defendant is proper. Defendant simply should not be expected to bear the cost of defending a patently frivolous claim, *the expense of which was multiplied by Plaintiff's reckless decision to spurn a reasonable settlement offer*…This is a matter of simple fairness.

*Cordoba,* 2003 WL 21499011 at *7.   In this case, Plaintiff's counsel knew Plaintiff had no cause of action and would not survive summary judgment.  Nevertheless, they persisted and Defendant was forced to expend time and money defending this patently frivolous lawsuit.

A litigant's obligations are not measured solely as of the time they are submitted to the court, but include continuing to advocate positions after learning that they cease to have any merit.   In this case, not only did Plaintiff file a frivolous Complaint *after* it became apparent that she had no reasonable basis in law or in fact to pursue a cause of action (the ultimate display of bad faith), Plaintiff persisted in the

---

litigation.   Therefore, Defendant has not waived its right to object to the admissibility of

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 11 of 15

prosecution of her claim even after the Plaintiff admitted *on the record* facts that defeated her cause of action.  In the face of their relentless prosecution, there can be no question that counsel had not merely suffered from a one-time lapse in judgment when they filed a lawsuit that should never have been filed and that should have been dismissed at the first opportunity.  Plaintiff and her counsel's relentless persistence remove all doubt that they were knowingly pursuing a frivolous cause and therefore acting in bad faith.  This is an inexcusable violation of an attorney's patent obligations as an officer of the Court and of Section 1927 and must not go unsanctioned.

## II.  **DEFENDANT IS ENTITLED TO AN AWARD OF FEES AND EXPENSES PURSUANT TO THE COURT'S INHERENT POWERS**

In *Chambers v. NASCO, Inc.*, the United States Supreme Court reaffirmed that federal courts have inherent power to impose sanctions, powers which include the ability to impose an award of attorneys' fees against parties or counsel who abuse judicial process.  501 U.S. 32, 111 S. Ct. 2123, *reh'g denied*, (1991).  The court's inherent power is not "displaced by the sanctioning scheme" of 28 U.S.C. § 1927. *Chambers*, 501 U.S. at 46.  In *Link v. Wabash R. Co*., 370 U.S. 626, 632 (1962), the Court recognized the courts' inherent power to levy sanctions in response to abusive litigation practices. *Roadway Express v. Piper et al*., 447 U.S. 752, 765 (1991).  Bad

---

Defendant's settlement offer for any improper purpose as defined by Rule 408.

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 12 of 15

faith, in turn, may be found in the actions that led to the filing of the lawsuit as well as in the conduct of the litigation.  *Id.* at 766.

As has already been demonstrated, Plaintiff and her counsel have, in bad faith, pursued litigation in the face of law and facts which should have prevented the Complaint from ever being filed.  This Court has the inherent power to sanction such conduct.  In doing so, this Court both deters such future conduct and compensates the Defendant so that it, and society, do not suffer the price of frivolous litigation.

Defendant simply should not be expected to bear the costs of defending a patently frivolous claim.  There are serious social costs of frivolous litigation to entities like Defendant who are then forced to pass on these costs to shareholders and consumers alike.  *See e.g., Cordoba v. Dillards, Inc.*, 2003 WL 21499011. Defendant recognizes that there is a balance to be achieved between sanctioning improper behavior and chilling vigorous advocacy.   In cases like this one, where the facts are so clearly contrary to the law and were well known to Plaintiff prior to filing, there is no reason to sheath the sword of sanctions.  Doing so would only encourage more frivolous suits at too dear a cost.

## III.   DEFENDANT IS ENTITLED TO AN AWARD OF FEES FOR THE TIME SPENT LITIGATING ITS FEE MOTION.

Time spent litigating a motion for sanctions should be made part of a reasonable fee award. *In re General Plastics Corp.*, 184 B.R. 1008, 1014 (S.D.

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 13 of 15

Fla.1995)(*citing Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir.), *reh'g denied*, 931 F.2d 901, *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991)); *Mike Ousley Prods., Inc. v. WJBF-TV*, 952 F.2d 380, 383-84 (11th Cir.1992). "[T]he need to deter frivolous litigation demands that this Court not only impose sanctions … but to also award attorneys' fees and costs in pursuing such sanctions." *In re General Plastics Corp*., 184 B.R. at 1014 (*citing Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1335 (S.D. Fla.1990)). One important object of monetary awards is to make-whole and compensate the innocent party for all damages caused by the violation. *Borowski v. DePuy, Inc., a Div. of Boehringer Mannheim Co.*, 876 F.2d 1339 (7th Cir. 1989). "Under this make-whole policy, it is therefore appropriate to award all fees incurred as a result of the initial frivolous position." *Id.* at 1342. Therefore, an award of an amount less than what the innocent party reasonably expended defending a case – which should never have been brought – would fail to accomplish an important function of monetary awards. Thus, Grand Bank is entitled to all fees and expenses reasonably incurred from the moment the Complaint was filed to date, including fees associated with bringing the instant fee motion. Again, but for Plaintiff's unreasonable, obdurate obstinacy, this motion would never have been filed. Therefore, Defendant is entitled to an award of fees and costs expended in bringing this motion.

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 14 of 15

## **CONCLUSION**

Plaintiff has occupied this Court and the Defendant in meritless and costly litigation for which there was no proper purpose.   This conduct amounts to bad faith and should be sanctioned at every opportunity.   Defendant Grand Bank respectfully requests this Court enter an order against the Plaintiff, her attorney and law firm jointly entitling Grand Bank to all reasonable attorneys' fees and expenses incurred from the date of the filing of the Complaint to date, including the fees and expenses associated with the filing of the instant fee motion.   Defendant further requests that this Court, upon entry of its order entitling Defendant to fees and expenses, allow Defendant reasonable time to file a detailed memorandum, supported by affidavits and other evidence, explaining the amount of reasonable fees to which it is entitled so that the Court can then consider the reasonableness of the fee award.

Dated this 14th day of  September, 2004.

Respectfully submitted,


/s Laura L. Mall, Esq.
Florida Bar No. 0160120
Christine D. Hanley, Esquire
Florida Bar No. 969737
E-mail:  chanley@cdhanley.com
CHRISTINE D. HANLEY & ASSOCIATES, P.A.
1000 Southern Boulevard, Second Floor
West Palm Beach, Florida 33405
Telephone:  561.659.5646
Facsimile:  561.659.1260

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Page 15 of 15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail on this 14th day of September, 2004 to: Craig J. Trigoboff, Waldman Feluren Hildebrandt & Trigoboff, P.A., 2200 North Commerce Parkway, Suite 202, Weston, Florida 33326 and Scott M. Behren, Esq., 3230 Stirling Road, Suite 1A, Hollywood, Florida, 33021.

<u>/s Laura L. Mall, Esq.</u>
Florida Bar No. 0160120

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Exhibit A

# EXHIBIT A

P. 1

∗   ∗   ∗   COMMUNICATION RESULT REPORT ( MAR. 2. 2004 10:40AM )  ∗   ∗   ∗

FAX HEADER:   CHRISTINE D HANLEY & ASSOC. PA

TRANSMITTED/STORED : MAR. 2. 2004 10:35AM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|------|------|--------|---------|--------|------|
| 426  | MEMORY TX | | 19544676222 | OK | 28/28 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                                    E-2) BUSY
E-3) NO ANSWER                                               E-4) NO FACSIMILE CONNECTION

---

## CHRISTINE D. HANLEY & ASSOCIATES, P.A.
1000 Southern Boulevard
Second Floor
West Palm Beach, Florida 33405
561/659-5646

### FACSIMILE TRANSMISSION

TO:        Scott Behren, Esq.

           FAX #: (954) 467-6222

FROM:      Christine D. Hanley, Esq.

           FAX #: (561) 659-1260

DATE:      March 2, 2004

NO. OF PAGES INCLUDING COVER SHEET: (28)

*If you have any difficulty in the receipt of this transmission, please call 561/659-5646 & ask for Jamie.*

### MESSAGE

Transmittal Follows Re:     Carline Smith v. Grand Bank & Trust of Florida

---

This facsimile contains **PRIVILEGED AND CONFIDENTIAL INFORMATION** intended only for the use of the Addressee(s). If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us by telephone and destroy this facsimile.

## CHRISTINE D. HANLEY & ASSOCIATES, P.A.
1000 Southern Boulevard
Second Floor
West Palm Beach, Florida 33405
561/659-5646

## FACSIMILE TRANSMISSION

TO:      Scott Behren, Esq.

         FAX #: (954) 467-6222

FROM:   Christine D. Hanley, Esq.

         FAX #: (561) 659-1260

DATE:    March 2, 2004

NO. OF PAGES INCLUDING COVER SHEET: (28)

*If you have any difficulty in the receipt of this transmission, please call 561/659-5646 & ask for Jamie.*

---

### MESSAGE

Transmittal Follows Re:    Carline Smith v. Grand Bank & Trust of Florida

---

This facsimile contains <u>PRIVILEGED AND CONFIDENTIAL INFORMATION</u> intended only for the use of the Addressee(s). If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us by telephone and destroy this facsimile.

CHRISTINE D. HANLEY & ASSOCIATES, P.A.
EMPLOYMENT LAW & LABOR RELATIONS

CHRISTINE D. HANLEY *
SALLY STILL *
BARI L. GOLDSTEIN
ELLEN D'ARCANGELO
*FLORIDA BAR CERTIFIED
LABOR & EMPLOYMENT LAW

OF COUNSEL
DIANE L. BEAUCHESNE

PRACTICE ADMINISTRATOR
MARY C. AGUIAR

WRITER'S e-MAIL:
chanley@cdhanley.com

March 2, 2004

BY FACSIMILE & U.S. MAIL

Scott Behren, Esq.
Waldman Feluren Hildebrandt & Trigoboff, P.A.
2200 North Commerce Parkway, Suite 202
Weston, FL  33326

Dear Mr. Behren:

Re:   Carline Smith v. Grand Bank & Trust of Florida

As we earlier discussed, I believe your understanding of Ms. Smith's employment at Grand Bank is somewhat incomplete.

As you know, Ms. Smith began Family Medical Leave in October 2003. In keeping with Grand Bank's Family Medical Leave practices, Ms. Smith was asked to advise the Bank's Human Resources representative, Bonnie Rock, when she would be returning to work. Sometime prior to November 10, it appears that Ms. Smith provided notice of her return to her supervisor, Dawn Calder. Between the time Ms. Smith provided notice to Ms. Calder and November 10, the day she reported to work in Loan Operations, there was a change in Smith's reporting relationship and notice of her return was lost in the shuffle. I understand that Ms. Smith called Bonnie Rock, the Bank's Human Resources representative on November 10, 2003, asking why she was fired; Ms. Rock immediately assured her that she had a job at Grand Bank & Trust and was not fired.

During Ms. Smith's conversation with Ms. Rock on November 10, Ms. Smith did not know how many hours she could work every day or whether she might work every day. Notwithstanding Ms. Smith's uncertainty, Ms. Rock asked her to complete a time card estimating her hours, which she did, and provide it to

Scott H. Behren, Esq.
March 2, 2004
Page 2 of 3

BY FACSIMILE & U.S. MAIL

Ms. Rock by facsimile. Shortly thereafter, Ms. Smith met with Mr. Martens, who offered her work at the Jupiter Branch as a lock box employee, a job within the restrictions she and her physician had expressed. Ms. Smith rejected that offer and on November 14, 2003, was provided with the opportunity to return to her position in Loan Operations. Ms. Smith was expected to return to work on November 19, 2003, but she failed to appear.

On November 24, 2003, Ms. Smith was advised by Ms. Rock that the salary continuation mentioned in her letter dated November 14, 2003, ended on November 21, 2003, and that the remainder of Ms. Smith's Family Medical Leave, would continue without pay until exhausted. Again, Rock asked Smith to call her, to let her know when she planned to return to work, and again Smith did not respond. Instead, Ms. Smith appeared at the Palm Beach Gardens Branch on November 25, 2003, and cleared out her desk. When asked by her supervisor, Bert Copeland, if she had spoken with Human Resources or Mr. Martens, she said she had not but gave Mr. Copeland a letter to copy for Mr. Martens and Human Resources. That letter dated November 25, 2003, from Smith's physician Elisabeth McKeen, M.D., stated that McKeen believed it would be in Smith's best interest not to return to her previous work environment and invited the recipient to call her for additional information. Human Resources called and left messages at McKeen's office on at least two occasions and never received a return call.

On December 19, 2003, Rock wrote Smith once more and offered to extend her Family Medical Leave by eight additional weeks as an accommodation. Once more Ms. Smith failed to respond.

On December 30, 2003, Rock called and left a message on Smith's telephone attempting to verify whether Smith had received a package containing information on the extended leave and on the Bank's new insurance carrier. Ms. Smith never responded.

Finally, on January 7, 2004, Ms. Smith's employment with the Bank was ended and she was provided with information on continuation coverage for her health insurance plans. Your representation letter was received by the Bank on January 19, 2004.

Mr. Behren, please know that Ms. Smith received all the Family Medical Leave benefits to which she was entitled *and more* and was only separated from employment at Grand Bank following weeks of the Bank's attempting to contact

Scott H. Behren, Esq.                                          BY FACSIMILE & U.S. MAIL
March 2, 2004
Page 3 of 3

her and receiving no response.  The Bank is prepared to return Ms. Smith to work
today, if she will only respond.

Sincerely,

Christine D. Hanley

CDH:jlm

Enclosures:   (11/10/03 memo to file from Bonnie Rock)
              (11/13/03 memo to file from Gerald F. Martens)
              (11/14/03 letter from Bonnie Rock to Carline Smith)
              (11/24/03 letter from Bonnie Rock to Carline Smith)
              (11/25/03 letter from Elisabeth McKeen To Whom It May Concern)
              (File Notes of Bonnie Rock of 11/26/03 and 12/2/02)
              (12/19/03 letter from Bonnie Rock to Carline Smith)
              (12/30/03 memo to File of Carline Smith from Bonnie Rock)
              (1/7/04 letter to Carline Smith from Bonnie Rock)
              (1/7/04 letter to Carline Smith re: Continuation Coverage)

cc:    Bonnie Rock
04-004 LTR Behren 030204



# GRAND
## BANK & TRUST
### of Florida™

# **Memorandum**

**TO:**     **File**

**FROM:**   **Bonnie Rock**

**DATE:**   **November 10, 2003**

**RE:**     **Carline Smith**

At approximately 11:30 this date during a conference with Mr. Martens we were interrupted by a staff member to say Carline Smith was on the telephone. I asked if I could return the call which wasn't possible. Carline immediately began to talk in a very loud tone about why she was fired. Noting the telephone number on Caller ID, I realized she was in our PGA offices. My immediate reply was "you have a job at Grand Bank & Trust, you were not fired".

Carline stated she had visited the loan department on 10/28/2003 delivering a doctor note to Bernice Foster saying she would be permitted to return to work on 11/10/2003. I apologized to Carline for not being aware of the information and mentioned my last information from loan dept. staff was that she would be able to return after 11/15/2003.

Carline proceeded to mention that throughout her many conversations with Ms. Calder she was told the loan department was doing fine and not behind in work and wanted to know why we hired another staff member.

1

I asked Carline to complete a timecard for the week and I'd call her later in the day.   Ms. Smith didn't know how many hours she could work per day and hoped she could work everyday.    I again asked her to complete a timecard "estimating" her hours. At 12:03 P.M. on 11/10/2003 I received the signed time card and an attachment appearing to be an appointment card. Payroll will reflect the time on the card and pay being for 15 hours. Carline left the PGA loan department shortly thereafter.

At approximately 4:30 P.M. today I called Carline Smith from my car to discuss her assignment for the next day.  Carline again began to carry on a very loud lecture type conversation and then stated "I have to go I have a 4PM appointment".  This is at nearly 5:00 P.M.  I asked if she could finish the conversation since I called at 4:30 and she said "I'm hanging up now and you can call me back after 6:15 P.M., if you feel like it".

I reported the conversation to Mr. Martens and the decision was made not to call her back that evening.



# **Memorandum**

**TO:**     File

**FROM:**  Gerald F. Martens

**DATE:**  November 13, 2003

**RE:**     Carline Smith

In a telephone call on November 11, 2003 Carline agreed to meet me in my office on November 13, 2003. Carline arrived for the scheduled appointment at 2055 Palm Beach Lakes Blvd. in West Palm Beach at 11:00 a.m.

At the beginning of our meeting I apologized to Carline for the miscommunication. I assured her that her job at the bank did not go away. We were unclear when she would be able to return. A new full-time employee is working in the loan department employee. A position with flexible part-time hours is available in our lockbox department payment processing department. This position was offered to accommodate Carline until she could return to full-time employment.

Carline became irate. I again assured her that she had a position at GB&T.

Carline said she was trained in loan area and only wanted to work in loan department. Carline came here at the recommendation of John Patten to work in the loan department.

Carline did not want to know anything about the lockbox position. Nor did she want "a position that was created for her", which is not the case. Lockbox has existed with the bank prior to 2003.

1

Again, I reiterated to Carline she was not fired; we had a position for her. Carline and I agreed we would continue to pay her for the part-time hours she logged on her timecard for the week of November 10 and continue that pay through November 21, 2003.

I also told her we would make arrangements to get her back into loan department.  I wasn't sure if we could make available the same desk but I would do my best.

Again, I made it clear to Carline she was still an employee of Grand Bank & Trust of Florida.

We ended our meeting with the agreement that I would call Carline no later than Tuesday, November 18, 2003, to determine when she would be returning to work.  This meeting ended at approximately 11:55 a.m.

● Page 2

# GRAND
## BANK & TRUST
### of Florida™

November 14, 2003

Ms. Carline Smith
1606 42nd Street
West Palm Beach FL 33407

Dear Carline:

As discussed earlier this week you may want to wait until your treatments end before returning to work or you may return to work as early as Wednesday, November 19th on a part-time basis. If you return on a part-time basis the difference between the hours work and a regular workday will be charged as FMLA. Additionally, please know that your FMLA balance will be adjusted upward to reflect time worked of 3 hours each work day from November 10th through Tuesday, November 18th.

Please let me know whether you will return to work on Wednesday or if you'd like to remain out until your physician releases you to full duty.

As agreed to in the conversation with Mr. Martens on Thursday, November 13, 2003, you will be paid 3 hours each day beginning November 10, 2003 and this will continue through next week even if you remain out.

Please call me if you have any questions and call me with your plans to return to the loan operations department.

Sincerely yours,

Bonnie L. Rock
Vice President

Ms. Carline Smith
1606 42nd Street
West Palm Beach FL 33407

GRAND
BANK & TRUST
of Florida

Post Office Box 3705
West Palm Beach, FL 33402-3705

November 24, 2003

**BY REGULAR MAIL & CERTIFIED MAIL**

Ms. Carline Smith
1606 42nd Street
West Palm Beach FL 33407

Dear Carline:

We have not heard from you in response to our November 14, 2003 letter, although we did expect you back at work on November 19, 2003. The salary continuation mentioned in that letter, and as earlier discussed with Mr. Martens on Tuesday, November 13, 2003, ended effective November 21, 2003. The remainder of your Family Medical Leave Act will continue without pay until that leave is exhausted.

Carline, please call me at your earliest opportunity to let me know when you plan to return to work.

Sincerely yours,


Bonnie L. Rock
Vice President

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

   Ms. Carline Smith
   1606 42nd Street
   West Palm Beach FL 33407

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☑ Agent
                    ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
                                   11/28

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number     7003 0500 0003 3601 5238
   (Transfer from service label)

PS Form 3811, August 2001      Domestic Return Receipt      102595-01-M-2509

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**GRAND BANK & TRUST OF FLORIDA**
**P. O. Box 3705**
**West Palm Beach, FL 33402-3705**

ATTN: Bonnie Rock

**Cancer Institute**
Affiliated with the Cancer Programs of Duke University Medical Center

Specializing in . st Cancer, Pain Management & Cancer Genetics

1309 North Flagler Drive
West Palm Beach, FL 33401
Phone: (561) 366-4151

3401 PGA Boulevard, Suite 340
Palm Beach Gardens, FL 33410
Phone: (561) 691-6060

November 25, 2003


RE: Carline Smith


To Whom It May Concern,

Carline has been under my care, since being diagnosed with breast cancer. She has been receiving radiation therapy treatments and has attempted to return to her employment at Grand Bank &Trust Co.

Unfortunately, she has had some difficulty with their human resource department. She was medically excused from work during her treatments and post surgical period. Upon healing, she was released to return on a part time basis on November 10th. When she reported to work, her job had been replaced and she was not assigned to work at that facility. There has been some difficulty in obtaining the actual reasoning for this unforeseen change, and Carline is deeply concerned.

It is medically necessary to eliminate and control the external stressors within Carline's life; this includes any exposure to hostility at the work place. I feel that it would be in Carline's best interest not to return to her previous work environment, secondary to the contradictory environment as well as added mental stress.

If you require any further information, please feel free to contact my office.


Sincerely,


Elisabeth A. McKeen, MD




EAM/pjk

# FILE NOTES:

Date 11 - 26 - 03

Action/Information:
Placed a call to Dr. Beth McKeen.
366-4151. Voice mail message requesting
a callback regarding Carline Smith
letter. (1:55 pm)
Need clarification as to Dr. Stmt. in
11-25-03 letter.

By: _____

Date 12-2-02

Action/Information:
Call to Dr. McKeen (366-4151) concerning
letter of 11-25-03. Left voice mail (second
request) for information relating to letter.
Need to verify if this is stating Carline isn't
coming back to work. Need clarification to
understand statements in letter.

By: _____

December 19, 2003

Carline Smith
1606 42nd Street
West Palm Beach FL 33407

Dear Carline:

Re: Extended Leave

As you know, Grand Bank & Trust of Florida's Family and Medical Leave ("FML")
policy asks its employees to contact the Director of Human Resources at least two
weeks prior to the end of leave to inform Grand Bank of the employee's availability
to return to work. Grand Bank requires appropriate medical certification before an
employee returns to work. An employee's failure to return from leave, or failure to
contact the Director of Human Resources as to the scheduled date of return, will be
considered a voluntary resignation.

You began your FML on September 15, 2003 and your twelve week period of FML
was exhausted on December 5, 2003. We have had no direct communication with
you as to whether you intended to return to work upon the conclusion of the twelve
week period.

Although you did not contact the Director of Human Resources before your leave
expired, Grand Bank would nonetheless agree to extend your unpaid leave time for
an additional 8 week period, if doing so would facilitate your return to work at
Grand Bank & Trust of Florida . During this time, Grand Bank would continue to
pay for your medical insurance while you will be responsible for the payment of
your portion of your AFLAC insurance; AFLAC will bill you directly for all future
premiums.

Should you accept this offer of extended leave, you will be required to obtain and
present certification from your health care provider that you are able to return to
work upon the conclusion of the extended leave period. Please let me know by
December 30, 2003 if this accommodation is desired and if you plan to accept the
additional 8 weeks of leave.

Page -2-
Carline Smith

In the interim, I have enclosed an application for insurance that you will need to complete so that you will be covered by Grand Bank's new carrier, should you decide to accept the additional leave. This new insurance coverage begins on January 1, 2004.   Please complete and return the enclosed form to me by December 30, 2003.  If I do not wish to accept our offer but would like to enroll in COBRA for extended health insurance coverage at your expense, please complete the same form and return with instruction to enroll in COBRA.   I will mail COBRA notification under separate cover.

If there is any other accommodation Grand Bank can provide to facilitate your return to work, please let me know.  My direct dial line is (561) 615-5019.  We hope that you can rejoin Grand Bank & Trust of Florida in the near future.

Sincerely,


Bonnie L. Rock
Vice President

# MEMORANDUM

TO:      File of Carline Smith

FROM:    Bonnie Rock

DATE:    December 30, 2003

RE:      Extended leave offer and insurance enrollment


At approximately 10:30 a.m. I placed a call to Carline Smith's home telephone number (863-9638), Jim Odza stood witnessed the message.   An answer phone picked up and I left a message stating the following:

Carline: This is Bonnie Rock at Grand Bank & Trust of Florida.  I am calling to verify that you are in receipt of a mailed package containing an extended leave offer and information from our new health insurance carrier. This coverage begins on January 1, 2004.  Please be aware of the deadline on the extended leave offer as I requested to hear from you by 5:00 P.M. on December 30th (today) to know if you'd like to be take part in our insurance plan.  To be covered under COBRA please complete the same for United HealthCare.  Health insurance is an important factor for all of us.

Please call me or drop off the completed form in the drive-in if that is your intention, by this evening.  My office number is 615-5019 or my cellular phone is on 24 hours a day at 310-6410.  Wishing you a happy, healthly new year.

January 7, 2004

BY REGULAR MAIL & CERTIFIED MAIL

Ms. Carline Smith
1606 42nd Street
West Palm Beach, FL  33407

Dear Carline:

You began your Family and Medical Leave ("FML") on September 15, 2003, and your twelve week period of FML was exhausted on December 15, 2003.  On December 19, 2003, I wrote you to let you know that the Bank would extend your unpaid leave time for an additional 8 week period if you responded by December 30, 2003. As of today, January 7, 2004, I have received no response from you. In addition, I left a telephone voice message on December 29, 2003 reminding you of the deadline.  Accordingly, your employment with Grand Bank & Trust of Florida is terminated effective immediately.

Your group health and welfare benefits ended on December 31, 2003. Under separate cover, you will receive information as to how you may arrange to continue your health benefits.

You are directed to return all Bank materials or property in your possession or under your control to my office as soon as possible.  You are further instructed to refrain from contacting any of the Bank's employees, vendors, residents or Supervisors, and you are not expected to appear at or access Bank premises for any reason.  Effective immediately, you are no longer authorized to act on behalf of Grand Bank & Trust of Florida in any manner.

Ms. Carline Smith
January 5, 2004
Page 2 of 2

If you have any questions regarding the foregoing, please contact me.

Sincerely,



Bonnie L. Rock
Vice President

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Ms.Carline Smith
   1606 42nd Street
   West Palm Beach Fl 33407

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7003 0500 0005 5601 5870

PS Form 3811, August 2001    Domestic Return Receipt    102595-01-M-2509



UNITED STATES POSTAL SERVICE

PM

First-Class Mail
Postage & Fees Paid
USPS
Permit No. 9

* Sender: Please print your name, address, and ZIP+4 in this box

GRAND Bank & Trust
2055 Palm Beach Lakes Blvd
West Palm Beach Fl 33409

ATTENTION : bonnie rock

71



January 7, 2004

Carline Smith
1606 42nd Street
West Palm Beach FL 33407

Re:   NOTICE OF RIGHT TO ELECT CONTINUATION COVERAGE

Dear Carline:

It is important that all covered individuals read this notice carefully. In addition, if there is a covered dependent whose legal residence is not yours, please provide us with the appropriate address so a notice can be sent to them as well.

## Loss of Health Coverage and Qualifying Event

As of midnight December 31, 2003 you no longer have coverage for group health/dental insurance by Grand Bank & Trust of Florida through Aetna Health Care or U.S. Life Insurance Company. This means a health/dental claim occurring on January 1, 2004 will not be paid. Your loss of health/dental insurance is resulting from termination. However, under provisions of COBRA, this constitutes a "qualifying event" which allows all covered individuals the right to buy back your group health/dental insurance and continue the coverage for a period of time. Your COBRA rights and obligations are detailed in this notification.

## Individual Election Rights and Eligibility

Each individual who was covered under the plan on the day before the event is a "qualified beneficiary" and has independent election rights to continuation coverage. This means each dependent who was covered can elect independently to continue coverage even if the covered employee chooses not to continue coverage. However, continuation coverage is available to qualified beneficiaries subject to their continued eligibility. Grand Bank & Trust of Florida reserves the right to verify eligibility status and terminate continuation coverage back to the original COBRA effective date, if it is determined you are ineligible or coverage was obtained through a material misrepresentation of the facts. If a qualified beneficiary is entitled to Medicare benefits or covered by other group health insurance at the time of the qualifying event, please contact the plan administrator to determine your COBRA eligibility.

## Electing Coverage

Please note the last day to elect coverage is March 1, 2004.

Step 1 – Sign and date the election form.

Step 2 – Make a copy of the signed election form for your records.

Step 3 – Mail the election form back in the self-addressed envelope provided. While not required, it is recommended you obtain proof from the Post Office you mailed the election form. Your election is deemed made on the date the election form is sent to the plan administrator. If the election form is not postmarked by midnight March 1, 2004, the rights to continue coverage will end.

Step 4 – Call the plan administrator within 10 days to ensure the election form has been received.

## No Coverage During the Election Period

You will not be covered under the plan during the above election period. As noted in the second paragraph, your health/dental insurance coverage will cease as of midnight December 31, 2003.. Any claims occurring after that date will not be paid as you will not be covered by the health/dental plan.

(561) 615-5000  •  Fax: (561) 684-1298  •  www.grandbankflorida.com

2055 Palm Beach Lakes Boulevard  •  Post Office Box 3705  •  West Palm Beach, FL 33402-3705

However, if a COBRA election is made as just described and applicable premiums paid as detailed in the next paragraphs, then your health/dental insurance plan will be reactivated back to January 1, 2004, and pending claims will be released for payment.

## Premium Payments

If you elect to continue your health/dental insurance, a qualified beneficiary is responsible for the full applicable premium payments for the coverages selected, plus a 2% administration charge. The applicable premium includes both the employer and employee's share of the total premium. COBRA premium payments can be either hand delivered or mailed to the address listed on the election form. If you hand deliver a payment, it must be hand delivered to personnel in the benefits department. If you mail your premium payments, document the date you sent the premium and call within 10 days to ensure the payment has been received. If premiums are not hand delivered, or if mailed, postmarked within the required premium periods as described in the below Steps 1 or 2, then you will forfeit your COBRA rights and protections.

## Step 1 - Retroactive Premium

Following your COBRA election, a qualified beneficiary has a maximum 45 calendar days from the date of election to pay according to the above rules. This premium payment is for the coverage period from the date of loss of coverage to the date you elect continuation coverage. In addition, you have 45 days from the date of election to pay any COBRA premiums that may have come due during the 45 day period. For example, if you elected COBRA coverage on 3/1/04, you would have until 4/15/04 to pay for the months of February and March. April's premium would have to be paid no later than 5/1/04.

## Step 2 - Future Monthly Premiums

Once your back premium is paid in Step 1, future monthly premiums will be due on the first of each following month. While due on the 1st, you will have a maximum thirty (30) day grace period following the due date in which to make these premium payments. Any claims occurring during the month will be held pending payment being made. If applicable payment is not made within the grace period, then coverage will be canceled back to the end of the prior month. Once COBRA coverage is canceled you will not be reinstated. Partial payments will not be accepted. It is the qualified beneficiary's responsibility to make these monthly payments as you will not receive a monthly billing statement.

Monthly premium amounts will be adjusted in the future if the applicable premium amount changes. If so, you will be notified as soon as possible prior to the new premium rates going into effect. If coverage is extended to 29 months due to a Social Security disability (see below), premiums can equal 150% of the applicable premium during the extended 11 month coverage period. Your state may have a premium payment program that may assist you with the payment of your premiums should you elect COBRA. To determine your eligibility for such a program, it is suggested you call the state's Department of Health & Human Services.

## Health Coverages Available to Elect

Our records indicate on the day before the qualifying event, each qualified beneficiary was covered by Aetna Health Care for medical insurance and U.S. Life Company for dental insurance. Under the provisions of COBRA, each qualified beneficiary can elect to continue all coverages as a package, or elect to take medical or dental only. The applicable premiums will vary depending on the coverages elected. Once an election of continuation coverage is made, the coverages may change in the future if modifications are made to the coverages provided to similarly situated active employees or an open enrollment occurs.

## Length of Continuation Coverage – 18 Months

If elected, each qualified beneficiary has the right to continue coverage for 18 months from the date of the qualifying event. This means coverage will be available through June 30, 2005. Two situations, however, may extend COBRA coverage beyond that date if applicable.

*Social Security Disability* – The 18 months of continuation coverage will be extended for an additional 11 months of coverage, to a maximum of 29 months, for all qualified beneficiaries if the Social Security Administration determines a qualified beneficiary was disabled according to Title II or XVI of the Social Security Act on the date of the qualifying event or becomes disabled <u>at any time during the first 60 days of continuation coverage.</u> It is the qualified beneficiary's responsibility to obtain the disability determination from the Social Security Administration and <u>provide a copy of the Social Security Disability Determination</u> to Grand Bank & Trust within 60 days of the date of determination and before the original 18 months of COBRA expire. <u>If these time frames are not complied with by the qualified beneficiary, the additional 11 months extension of COBRA coverage will not be provided.</u> It is also the qualified beneficiary's responsibility to notify Grand Bank & Trust of Florida within 30 days if a final determination has been made that they are no longer disabled.

*Secondary Events* – Another extension of the 18 month continuation period can occur, if <u>during the 18 months</u> of continuation coverage, a second event takes place (divorce, legal separation, death, Medicare Entitlement, or a dependent child ceasing to be a dependent). If a second event occurs, then the 18 months for continuation coverage will be extended to 36 months from the date of the original qualifying event date for the qualified beneficiary spouse and/or dependent child. The extension does not apply to the employee. If a second event occurs, it is the qualified beneficiary's responsibility to notify Grand Bank & Trust <u>in writing</u> within 60 days of the <u>second</u> event and within the original 18 month COBRA period. In no event, however, will continuation coverage last beyond three years from the date of the event that originally made the qualified beneficiary eligible for continuation coverage.

## New Dependents and Open Enrollments

If, during the 18 months (or 29, if applicable) of COBRA coverage, a qualified beneficiary gets married, the new spouse may be added to the coverage, if the plan allows such an addition and the plan rules regarding the addition of the new spouse are followed. The new spouse does not gain the status of a qualified beneficiary and loses coverage if the qualified beneficiary who added the spouse loses COBRA coverage.

In addition, if a child is born to or placed for adoption with the qualified beneficiary, the qualified beneficiary can again change their coverage status to include the new born or adopted child on the health/dental plan. Unlike a new spouse, however, the new born or adopted child <u>will gain the rights of all other "qualified beneficiaries".</u> The addition of a new born or adopted child does not extend the 8 month coverage period. Should this situation arise, the plan procedures for adding new dependents can be found in the Summary Plan Description. Premium rates will be adjusted at that time to the applicable rate. In addition, should an open enrollment period occur during your COBRA continuation period, we will notify you of that right as well.

## Cancellation of Continuation Coverage

COBRA continuation coverage will end prior to the expiration of the 18 month (or 29, if applicable) continuation period for any of the following reasons:

1. Grand Bank & Trust of Florida ceases to provide any group health/dental plans to any of its employees;
2. Any required premium for continuation coverage is not paid in a timely manner;

3.  A qualified beneficiary becomes covered under another group health/dental plan that does not contain any exclusion or limitation with respect to any pre-existing condition of such beneficiary other than such an exclusion or limitation which does not apply to (or is satisfied by) such beneficiary by reason of the Health Insurance Portability and Accountability Act of 1996;

4.  A qualified beneficiary becomes entitled to Medicare (the date of entitlement);

5.  A qualified beneficiary extended continuation coverage to 29 months due to Social Security disability  and a final determination has been made the qualified beneficiary is no longer disabled (first day of the month after 30 days from the final determination);

6.  A qualified beneficiary notifies Grand Bank & Trust of Florida that they wish to cancel continuation coverage (date of notification).

## Certificate of Health Insurance Portability

Enclosed with this notice is your Certificate of Health Insurance Portability.  It details the amount of time you have been covered under our group health insurance plans.  Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the time covered under our group health plan (including COBRA coverage, if elected) may be used to reduce a new health plan's pre-existing condition period.  For example, if you were covered under our health plan for 10 months, including COBRA coverage, and your new health plan has a 12 month pre-existing condition clause for new enrollees, the new plan would subtract 10 months from the 12 month pre-existing condition period, which would leave you with only a two month pre-existing condition period. However, for your coverage under our plan to be counted under a new health plan, there must not be a break in coverage for more than 63 days from the time our plan (including COBRA coverage, if elected) ceases, to the date of enrollment in your new health plan.

We use the phrase "may be used" in the above paragraph because health plans become subject to HIPAA requirements at different times after 7/1/97, and your new health plan may not have been subject to HIPAA requirements until sometime in 1998.  Questions regarding a new health plan's pre-existing condition period and the impact HIPAA will have should be directed to your new health plan.  If you obtain other health insurance, present this Certificate of Health Insurance Portability to your new health insurance plan and they will determine if any benefits are available to you in this matter.

If you elect COBRA coverage, an updated Certificate of Portability will be sent to you when your COBRA coverage ceases.  If you lose the enclosed certificate, one can be requested up to 24 months from the date your coverage (or COBRA coverage) ceases.

## Address Change and Questions

To receive accurate and timely information regarding your continuation rights, please notify Grand Bank & Trust of Florida of any changes in address immediately.  If you have any questions as to the contents of this notice or your COBRA rights, please contact Bonnie Rock at Grand Bank & Trust of Florida.  This notice is not a description of actual benefits under the policy. Should a qualified beneficiary need actual plan benefits information to assist in making the election decision, please consult your Summary Plan Description or call the benefits department, and information will be provided to you.

## BENEFITS CONTINUATION PLAN ENROLLMENT FORM

TO: Carline Smith

COBRA EFFECTIVE DATE: 12/31/2003

QUALIFYING EVENT:
Termination

SOCIAL SECURITY NUMBER:
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

LIST ELIGIBLE PERSONS TO BE COVERED (Persons previously covered only):

| NAME – LAST | FIRST | BIRTHDATE | SEX | SS# |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| COVERAGE LEVEL | MONTHLY PREMIUM |
|---|---|
| | |

I hereby request enrollment in the _____ for myself and eligible qualified dependents listed above and agree to pay the premium as required. I understand that continuation coverage will terminate under several circumstances, including: the date I or a continued dependent – become covered under another group health/dental plan which has no pre-existing condition exclusion affecting me/them, become entitled to Medicare, or on the date on which the group health/dental plan ends. I also understand that if I was disabled at the time of my qualifying event, IO may be eligible for extended continuation coverage, and I agree to inform you of such within 60 days of receiving any award letter from Social Security.

_____     _____
Signature                                          Date

NOTE:     In order to be enrolled in the Benefits Continuation Plan this enrollment form must be received no later than 60 days following the later of: the date of your COBRA qualifying letter or termination of employment.

# GRAND
## BANK & TRUST
### of Florida

Post Office Box 3705
West Palm Beach, FL 33402-3705

Carline Smith
1606 42nd Street
West Palm Beach FL 33407

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Exhibit B

EXHIBIT **B**

P. 1

*  *  *  COMMUNICATION RESULT REPORT ( MAR. 2. 2004 11:02AM )  *  *  *

FAX HEADER:  CHRISTINE D HANLEY & ASSOC. PA

TRANSMITTED/STORED : MAR. 2. 2004 11:01AM

| FILE | MODE | OPTION | ADDRESS | RESULT | PAGE |
|------|------|--------|---------|--------|------|
| 428 | MEMORY TX | | 19544676222 | OK | 2/2 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL                    E-2) BUSY
E-3) NO ANSWER                               E-4) NO FACSIMILE CONNECTION

---

## CHRISTINE D. HANLEY & ASSOCIATES, P.A.
1000 Southern Boulevard
Second Floor
West Palm Beach, Florida 33405
561/659-5646

### FACSIMILE TRANSMISSION

TO:            Scott Behren, Esq.

               FAX #: (954) 467-6222

FROM:          Christine D. Hanley, Esq.

               FAX #: (561) 659-1260

DATE:          March 2, 2004

NO. OF PAGES INCLUDING COVER SHEET: (1)

*If you have any difficulty in the receipt of this transmission, please call 561/659-5646 & ask for Jamie.*

### MESSAGE

Transmittal Follows Re:      Carline Smith v. Grand Bank & Trust of Florida

This facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the Addressee(s). If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us by telephone and destroy this facsimile.

**CHRISTINE D. HANLEY & ASSOCIATES, P.A.**
1000 Southern Boulevard
Second Floor
West Palm Beach, Florida 33405
561/659-5646

## FACSIMILE TRANSMISSION

TO:      Scott Behren, Esq.

           FAX #: (954) 467-6222

FROM:    Christine D. Hanley, Esq.

           FAX #: (561) 659-1260

DATE:     March 2, 2004

NO. OF PAGES INCLUDING COVER SHEET: (1)

*If you have any difficulty in the receipt of this transmission, please call 561/659-5646 & ask for Jamie.*

## MESSAGE

Transmittal Follows Re:    Carline Smith v. Grand Bank & Trust of Florida

This facsimile contains <u>PRIVILEGED AND CONFIDENTIAL INFORMATION</u> intended only for the use of the Addressee(s). If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us by telephone and destroy this facsimile.

**CHRISTINE D. HANLEY & ASSOCIATES, P.A.**
EMPLOYMENT LAW & LABOR RELATIONS

CHRISTINE D. HANLEY *
SALLY STILL *
BARI L. GOLDSTEIN
ELLEN D'ARCANGELO
* FLORIDA BAR CERTIFIED
LABOR & EMPLOYMENT LAW

OF COUNSEL
DIANE L. BEAUCHESNE

PRACTICE ADMINISTRATOR
MARY C. AGUIAR

WRITER'S e-MAIL:
chanley@cdhanley.com

March 1, 2004

<u>BY FACSIMILE & U.S. MAIL</u>

<u>FOR SETTLEMENT PURPOSES ONLY</u>

Scott Behren, Esq.
Waldman Feluren Hildebrandt & Trigoboff, P.A.
2200 North Commerce Parkway, Suite 202
Weston, FL  33326

Dear Mr. Behren:

    Re:  <u>Carline Smith v. Grand Bank & Trust of Florida</u>

      Under separate cover I've provided you with a journal of the events attendant to Ms. Smith's last several weeks of employment at Grand Bank. Your client is without a case. Nevertheless, and in an effort to resolve all matters between Ms. Smith and Grand Bank, please know that Grand Bank is prepared to resolve this matter for $2,500.00.

      I look forward to hearing from you shortly.

Sincerely,

Christine D. Hanley
CDH:jlm
cc:   Bonnie Rock
04-004 LTR Behren 030104-2

Carline Smith v. Grand Bank & Trust of Florida
Defendant's Memorandum of Law in Support of Its Verified Motion for Sanctions
Case No.: 04-80343 HURLEY/HOPKINS
Exhibit C

EXHIBIT C

CHRISTINE D. HANLEY & ASSOCIATES, P.A.

EMPLOYMENT LAW & LABOR RELATIONS

CHRISTINE D. HANLEY *
SALLY STILL *
BARI L. GOLDSTEIN
ELLEN D'ARCANGELO
* FLORIDA BAR CERTIFIED
LABOR & EMPLOYMENT LAW

OF COUNSEL
DIANE L. BEAUCHESNE

PRACTICE ADMINISTRATOR
MARY C. AGUIAR

WRITER'S e-MAIL:
chanley@cdhanley.com

July 14, 2004

BY FACSIMILE & U.S. MAIL

Scott Behren, Esq.
Waldman Feluren Hildebrandt & Trigoboff, P.A.
2200 North Commerce Parkway, Suite 202
Weston, FL  33326

Dear Mr. Behren:

Re:  Carline Smith v. Grand Bank & Trust of Florida

In follow-up to our verbal offer yesterday to forego seeking sanctions and fees if you agree to dismiss this case with prejudice this week, I have assembled some case law and statutory references which I believe will assist you in making your decision.

Plaintiff is mistaken in the belief that Defendant was obligated to restore her to her former position on a part-time basis or its equivalent on November 10, 2003. While an employee who takes leave under the FMLA is entitled to be restored to the same or an equivalent position upon returning from leave (29 U.S.C. § 2614(a)(1); see also 29 C.F.R. § 825.214(a)), an employee has no such entitlement if she is only able to return to work on a reduced schedule or intermittent basis. In that event, the employer may place an employee in another position with equal pay and benefits. "[A]n employer may assign an employee to an alternate position with equivalent pay and benefits that better accommodates the employee's intermittent or reduced leave schedule." 29 C.F.R. § 825.117. Further, "[a]n alternate position for these purposes does not have to have equivalent duties." 29 C.F.R. § 825.204(c). The following case is illustrative:

Mr. Scott Behren
July 14, 2004
Page 2 of 3

The FMLA provides that once an employee returns from FMLA leave, the employer must reinstate her in her previous position or in an equivalent position. 29 C.F.R. § 825.214(a). Plaintiff argues that defendants violated the FMLA by not reinstating her to the Purchasing Agent position. However, where the employee will be taking recurring intermittent leave, the FMLA allows an employer to transfer an employee to any "available alternative position for which the employee is qualified and which better accommodates recurring periods of leave than does the employee's regular position." 29 C.F.R. § 825.204(a); 29 U.S.C. § 2612(b)(2). Once the need for intermittent leave has ended, the employer must reinstate the employee back in her original position or in an equivalent position. 29 C.F.R. § 825.214(a). ... Defendants' determination that the Payroll Clerk position could better accommodate plaintiff's recurring leave and their subsequent decision to transfer her is, therefore, specifically authorized. The court holds that summary judgment against the plaintiff is appropriate on her failure to reinstate claim.

*Covey v. Methodist Hospital of Dyersberg, Inc.*, 56 F.Supp.2d 955, 968 (W.D.Tenn. 1999).

Like the plaintiff in *Covey*, Ms. Smith is under the mistaken impression that Grand Bank was required by law to allow her to work her full-time position on a part-time basis. Application of the law to the salient facts now on the record demonstrate that Plaintiff cannot maintain a case and, like the plaintiff in *Covey*, will not survive a motion for summary judgment. Ms. Smith received FML with full benefits for a period greater than the 12 weeks required by the FMLA, from September 15, 2003 through December 31, 2003. Ms. Smith admits and has authenticated documents which demonstrate that she was able to return to work only part-time as of November 10, 2003, and then only for a short period of time. Ms. Smith admits that she was offered an alternate position with equal compensation which she rejected on November 13, 2003. While Ms. Smith produced a letter from one of her treating physicians releasing her to work full-time on December 23, 2003 (after the expiration of her FML on December 15, 2003), her testimony reveals that her other physicians had not released her to work full-time even as of that date. Ms. Smith further testified that she remains unable

CHRISTINE D. HANLEY & ASSOCIATES, P.A. • 1000 SOUTHERN BLVD. • 2ND FLOOR • WEST PALM BEACH, FL 33405 • PHONE 561-659-5646 FACSIMILE 561-659-1260

52 of 53                                                    WWW.CDHANLEY.COM

Mr. Scott Behren
July 14, 2004
Page 3 of 3

to return to full-time work.  Because Plaintiff has received the 12 weeks of FMLA leave to which she was entitled, was never able to return to work full-time, rejected a part-time position which would have better accommodated her need for a reduced schedule during her recovery period, and is still unable to return to work full-time, there is no cause of action and there are no damages.  Simply stated, Plaintiff was not denied any benefit to which she had a right.

On these facts, Ms. Smith cannot prevail on her FMLA claims as a matter of law.  Because these facts and the law were all known to you or should have been known to you at the time the lawsuit was filed, I strongly encourage you to consider our offer.  Your pursuit of this case beyond this point, where the record is clear that Ms. Smith cannot make out a *prima facie* case, will subject you personally and your client to a motion for sanctions and fees immediately upon entry of summary judgment.

I look forward to hearing from you shortly.

Sincerely,

Christine D. Hanley
CDH:llm
cc:    Bonnie Rock
04-025 LTR Behren 07.14.04